The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention, for the Court is now setting. God save the United States and this Honorable Court. Be seated. We want to welcome all of those present to the Fourth Circuit Court of Appeals this morning. We have four interesting cases and a number of great lawyers and we look forward to the arguments. In the first case, number 2265, Harrell v. Deluca. Mr. Lynch, good to have you with us. Good morning. I think this case is an important case for homeowners in the state of Virginia. If left undisturbed, I think it opens a dangerous door for contactors to cut corners. It's all a state law case, though, isn't it? Yes, it is, Your Honor. Like a property dispute made its way into federal court. Yes, Your Honor. Not a home construction. That's right, Your Honor. I would say the practitioner in this space who represents contactors often, you get a federal opinion and it's something you can hang your hat on. But in any event, I think it opens the door to cut corners on licensing and building permits and avoid serious consequences by saying you did it accidentally. I'd be happy. There's three issues in this case. I'd be happy to skip to an issue the panel is interested, but otherwise I'll take them in order. Subcontractor licenses. As you know, the district court dismissed a claim for fraud, actual fraud and constructive fraud, based on the allegation that he represented to my clients before the contract was entered into. Now, you all won part of your case, didn't you? Excuse me, Your Honor? Did you win part of your case? Yes, Your Honor. You got a bunch of money. We did. That's a good question, Your Honor. More of an observation. Usually, the winner is not speaking first. Go ahead. Yes, Your Honor. You were awarded around $180,000 plus interest. What my clients always wanted, and made clear in this case from the outset, they bought a house that was built without the permits that are required by Virginia law. And they bought a house that was constructed by subcontractors who were not licensed. You want to rescind the contract? We always wanted to rescind it. And the reason, Your Honor... You don't want $180,000. You want to just take that? They don't want a house that they bought for $4.5 million that was built illegally. They don't want that. They want their money back. They'll give the title back. They just want their money back. And rescind and unwind. And jumping forward a little, the rescission part of the opinion, which wasn't addressed in the briefs, is a breach of contract rescission discussion. It's all in the rubric of breach of contract. It's a different ballgame, different ball of wax, when you're talking about rescission and constructive fraud. Can I ask you about the fraud, the constructive fraud? Because that's the allegation that it was fraud to say we have the permits when they didn't have the permits. But there was a bench trial. And when the court was talking about the Virginia Consumer Protection Act claim, he addressed this permit question and said, after hearing the testimony, I find that the contractor intended to get the permits. He was working to get the permits. And the permits were obtainable. So the only possible damage flowing from any misstatement about the permits was the delay in occupying the house. And I can't award them anything for the delay because the plaintiffs also were at fault when it comes to the delay. So your argument is that your clients would be entitled to rescission because of that delay? That's the only consequence from not having the permit. That's what the district court found, as a matter of fact. You're correct, Your Honor. Yes, the answer is that delay in occupancy is an injury, which satisfies the injury element. The permits, the fact that he said he had permits and he really did not, was not inconsequential. It injured us. And it's injured us and we can't occupy it. My clients moved from Connecticut in reliance on business. The district court found that your clients were also partially at fault for the delay. Yes, Your Honor. They told him to stop working. Yes, Your Honor. But the testimony of the code official. You threw him out, didn't you? Yeah, it's illegal to occupy. Yeah, but it's more than just, yeah. It's illegal to occupy the house. But does that, it just seems to me kind of, once the trial has been had, the court has weighed the evidence, that this is a sort of, what are you going to get if you go back? You're not going to get rescission because of a couple weeks of delay that's partially your client's fault, are you? I think I am, Your Honor. And I think I'm actually even entitled to it. Why? Because there's a case called Bird Miller we cited in our briefs. And it relies on a case called Packard Norfolk, which is the car case. And both those cases, they're both constructive fraud cases, only constructive fraud, no actual. And the court in those cases said that the contract is voidable. It's voidable. And Bird Miller, they actually remanded and ordered the trial court to enter a decree of rescission. And said the Bird Millers, quoting now, were entitled to rescission unless they weighed that right by closing. And then it went on upon, they didn't know the facts, so how could they weigh it by closing? That's Bird Miller. Packard, and this has been repeated in some subsequent cases, that the whole contract is rendered voidable at the instance of the defrauded party. And it goes on to say that constructive fraud and actual fraud, when you're talking about that remedy of rescission, it would be unfair for the party who made the fraudulent representation to obtain the fruits of the bargain. But doesn't it seem like, based on the district court's findings here, that it would be unfair to undo the entire sale when the court found the only consequence of this statement was a couple weeks of delay? I don't agree that it would be unfair, Your Honor. And the court sort of went to great lengths, and I could say some quotes, but I think there's almost a tacit admission by the trial court that there were permanent misrepresentations. And the quote that you said, where you said the only damages arising from the permanent misrepresentations are a delay in occupancy. But he didn't make an express finding on that. If you remain, and he makes an express finding, that you're sitting there at the table before the contract is signed, and Mr. Deluca says it's all permitted, and it is, and you go in and sign the contract on that basis, and there is some consequence, even the minor consequence of moving your family from Connecticut, that you did not have any place to move into, and it didn't get into, you know, carrying costs and things like that could have an economic consequence for the delay in and of itself. So we meet the element of injury. We have to be remanded, but it appears we can meet the element that there was a misrepresentation. And once you have those two things and the other elements of reliance, which wasn't discussed, but we weren't kicked out on that basis, once you have that, under Bergmiller, Packard, the law in Virginia, it's kind of like mutual mistake, but it's an absolute right to void the contract. Virginia recognizes that, at least it distinguishes between a statement that is made at the time, a false statement is made then, and one in which there is a promise that becomes false, the latter being fraud, the former being fraud, and the latter being breach of contract. Yes, Your Honor. Did, do you allege, is it your position that Luca here had already, they'd already had these permits as opposed to that he promised to get the permits? Yes, the misrepresentations, and they're quoted in numerous places. Which one I'm asking, are you proceeding on? Yeah, so this is. The distinction between, and that factual distinction is important. Yes. It's important in terms of how we proceed on it, one being if you're making statements that are false, and you say they're already false when they're made, as opposed to a promise that becomes false, that distinction is critical under Virginia law. Yes, Your Honor. So what, how are you proceeding here? That they were a present statement of fact, and I can quote from J. That would be fraud, and that's what the trial judge found. Yes, he made present misstatements of fact. They were watching the construction go on. It was. So you do not maintain that they were promises that were made that became false. Correct. I mean, the Joint Appendix 636 is the opinion. They're quoting our alleged misrepresentation. Luca had a permit for the main house, and the carriage house was under the same permit. That statement, we're standing here at the house that's under construction. Do you have a permit for all this? Did Luca had a permit for the main house, and the carriage house was under the same permit? I think that's a present statement of fact that was not true. You know, there's another statement. The permits had been filed other than the owner's suite addition. Had been filed. It's already done. And it wasn't. So I hope that addresses that, Your Honor. You know, so there's more here on the fraud one. I think the key legal error in the opinion from which perhaps the rescission error flowed is that both the economic loss rule and the source of duty rule bar plaintiff's claims for constructive fraud. He makes that statement of Virginia law. So I want to follow up because I'm thinking about your answer to that. It's a present fact there. What did the district court find? The district court's finding was based upon, was it based upon that he did not follow through on his promises? With respect to the permitting issue. Yes. We were not denied that claim on the idea that it was a future, something to happen in the future. The opinion doesn't say that. He recognizes and acknowledges, Your Honor, the trial court, what statements we are moving on.  And he ultimately said what he just said. There may have been permanent misrepresentations, essentially paraphrasing. There may have been a delay in occupancy, but I'm not going to get into any of the consequences of that because as a matter of law, an accidental misrepresentation does not give rise. The economic loss rule bars if you're in constructive, not actual. He said you cannot bring a claim for constructive fraud. It's barred by the source of duty rule, but impliedly that actual fraud is not. And that is an error of law, I believe. Berg Miller, again, is a constructive fraud case, only constructive fraud. And it was to induce a contract. So the idea in Packard Norfolk was the same. It was an innocent misrepresentation. That was a car case. They said the salesman said the car is perfect and everything and meant it and believed it. But they allowed rescission. And in both Berg Miller and Packard Norfolk, longstanding Virginia Supreme Court cases show that it is incorrect to say that a pre-contractual misrepresentation is barred by the source of duty rule. And this court in Hitachi, in a footnote 9, has shot that idea down. The Virginia Supreme Court in Tingler has some language that shoots that idea down. But the main cases are this Packard Norfolk and Berg Miller. It's just not correct that a pre-contactual misrepresentation that occurs before the contract comes into existence is that you can bar a claim based on the source of duty rule for an act that occurred before the contract was formed. That's not the law of Virginia. And that was the holding of this case below. So I'd be happy to quote. Can I ask you, before your time is up, moving to the fraud and the inducement, summary judgment was granted. It's, again, the court granted summary judgment, but then the court held a bench trial on the other claims. And one of the summary judgment rulings was that your clients hadn't shown damages flowing from the use of unlicensed contractors. And I wondered about that because the damages after the bench trial were for work that wasn't finished. And then there was only, the court rejected the idea that any work needed to be redone that had already been done, except for masonry and the lintel on the carriage house. And I just wondered, is there evidence that connects an unlicensed subcontractor to the masonry and lintel on the carriage house? Was that Eagle Contractors? It looked like Eagle just did framing. But did they actually do the masonry and the lintel? I believe the answer is yes, Your Honor. Can you tell me? You don't have to know right now, but maybe on rebuttal you can tell me where that is in the record because I couldn't sort it out. Yes. Yes, Your Honor, I will think about that. And just very quickly, he found that their expert was correct on the measure of damages. And if you look at the expert report, it's on record pages 1,500 and so on, and you look at the list of all the things, it says repair accident, 6Y. And I have a quote, which I'll find, but with that I'll stop. Thank you, Your Honor. Mr. Coughlin. May it please the court. Michael Coughlin here on behalf of the Appalachee Douglas DeLuca, the defendant below. The district court's rulings on summary judgment and its application of the source of duty and economic loss rules were correct because the heralds did not prove fraud or establish an injury tied to their claims of fraud. I think that should be a focus of this court. Look at the injury that the court actually found. The district court's exact words were that the construction was unfinished as opposed to inherently defective or of poor quality. With unfinished work as the sole injury, this case moves out of the realm of fraud and into the realm of contract law. This is because the only place a duty arose to complete incomplete work by a certain date was in a contract. The post-closing construction agreement, section 1.2. There are no findings that support the herald's claim that they were injured by licensing or building permit representations, as these claims would relate to defective or poor quality work. There's not even a finding that DeLuca made the statements the heralds allege related to licensing or building permits. And the heralds have not appealed any factual findings or lack of factual findings. All that they are relying on is, as Mr. Lynch said, purportedly a tacit admission by the trial court. But I think this court needs more to actually say, here's an injury the trial court found that is tied to their claims of fraud. So the allegation is that DeLuca used subcontractors who were not licensed. And the question is whether that's required by Virginia law. Right. Well, that is a fair question. Our response is that Mr. DeLuca did not acknowledge making that statement, one. Two, not every person who enters a job site has to be licensed. Obviously, employees of a general contractor don't have to be licensed. Does the subcontractor have to be licensed under Virginia law? If they perform certain work that requires a license, yes. And the challenge that the trial court had, as noted in the summary judgment opinion, is there was no, first of all, statement that this subcontractor has this license by Mr. DeLuca that was alleged. Nor was there evidence that indicated this subcontractor performed this scope of work that required this license. It wasn't the evidence that he said all my subs are licensed. I only use licensed subs. I mean, all was in multiple of the supposed quotes. The plaintiffs say he told them all. I don't understand what's not specific or too general about that. That means all of them. They all have the licenses that they need to do this work. And they say that wasn't true. And if we knew it wasn't true, we wouldn't have agreed to buy this house. And, again, DeLuca at the summary judgment stage disputed making those statements. Right. That's what we call a dispute of material fact. Right. In addition, what they did not put forward was this particular contractor performed this scope of work that required this particular license, and they didn't have it. What does it matter that he disputed it at the summary judgment stage if we're going to look at the evidence in a light most favorable to the non-moving party? Why does it matter that he disputed it? Understood. I'm trying to understand the answer to that. You make a deal out that he disputed it. It doesn't matter that he disputed it if the evidence in a light most favorable to the non-moving party leads to a different conclusion, does it? It's a fair point, Your Honor. I want to be clear. I'm not just trying to make a fair point. I'm saying that's the law. Understood. Okay. As a result, there still needs to be more. Let's say that the statement was made. They would still need to establish this particular contractor needed this license. Here's the scope of work that they performed, and they didn't have this particular license. There's no expert report that was submitted on summary judgment that tied all of those things together. It was left to the trial court to figure out, well, they said he doesn't have a license. Does he need a license? In addition … Why does it matter if they need a license? He said they're all licensed, and they said if that wasn't true, it would matter to us. And then at summary judgment, they had a list of contractors that they had looked up online or something that says these are ones, contractors, subs he's actually used, who don't have a license. Taking their statement in light most favorable to them, the statement still doesn't mean that every person who stepped on the job had a license. Because not everyone, again, who enters a job site … But they had a company, right? Let's talk about Eagle Contractors LLC, right? They need a license, and the evidence in the light most favorable to the plaintiffs was that they didn't have a license. We don't need to talk about every individual who steps on the premises. Let's talk about the actual evidence. It's fair, and they didn't establish which license was needed because of the scope of work that was performed, and therefore established that this contractor needed a license and didn't have one. In addition … That's why you have a trial. I mean, that's what summary judgment does is once you identify a disputed fact, you then go to trial. You have discovery, and you come out with these issues here, and you resolve disputed facts at trial, not at summary judgment. Summary judgment would deal with undisputed facts. And, of course, now what you're relying upon here deals with the representations not on the part of the heralds. There's an argument they make, or at least that I think is here, that the heralds are really attacking the situation in which they're determining where the trial judge wants to go on this. Well, and that was certainly our position at trial, that this evidence related to licensing should not come in because of the summary judgment ruling that the court made. Nonetheless, the court allowed testimony at trial of licensing. This is in the record at 451 to 452. And the reason the court said he wanted to hear evidence of this was because licensing went to the quality of work. So the judge ruled on summary judgment, but then allowed testimony related to licensing and its impact on the work in a trial over our objection. But nonetheless, the trial court found that the injury did not relate to licensing. If you have, following their train of logic, a whole bunch of unlicensed contractors, you know, or people on the job site, you would think you would find, you know, inherent defects or that the quality of work would be poor. The express finding of the trial court was the work was unfinished, not of poor quality. But what about their representations that they would not have done this except for the fact of you having a licensed contractor? In other words, they would not have entered this contract if they knew he was not going to use licensed contractors and he used unlicensed ones. They would still need an injury in order to establish fraud that was tied to that representation. Injury is they would not have entered into the contract. That is, I believe, reliance or an element to meet reliance, not injury. The injury has to relate to their, you know, to the representation and their reliance on it. And the injury here didn't relate to licensed contractors or permitting, for that matter, and instead just related to the work not being finished, making this just a contract case. Your assumption is an unlicensed, you're saying that the work here is manifestly the same as that that a licensed contractor would have done. That's what the court ended up finding. The court took in evidence from their expert, voluminous evidence, as to what they believed were defects and didn't find defective work. It just found unfinished work that, of course, the heralds prevented Mr. DeLuca from actually finishing. So if there's no injury tied to the claim of fraud and the court's damages findings remain unappealed, that's where we're stuck, if you will. And I think it ties this court's hands to say, well, we can't have fraud without an injury. But that's kind of a question that begs itself when you think about if it mattered to the heralds, and they have an affidavit that says, to that effect, I know it's self-serving, but we say in the file a self-serving affidavit is sufficient to create an issue of fact, it mattered to them that you would have licensed contractors. And when they weren't, that was what they alleged is the injury, is that we would not have entered into this contract, not just reliance. They wouldn't have done it. That's the injury. We wouldn't have done this, but if we'd known, you were not going to have those licensed contractors because that's the representation we relied upon. That's effectively making the misrepresentation the only basis of fraud and the basis of the injury itself. And I don't think that's the law. I mean, because clearly, whether you call it damage, damages, or injury, that is a critical prong to actually finding fraud and therefore establishing a remedy. Here, a remedy has already been established. There have been damages that have been awarded. Those damages arose because the property work was not finished by August 1st. That duty arose solely based on the post-closing construction agreement. So, are we permitted to consider evidence that came in the trial when we were reviewing the summary judgment? I think that in light of what actually happened and the fact that the court, in a way, disregarded or overlooked its summary judgment ruling, absolutely. And also, you don't… You're saying the trial remedied any problem with the summary judgment? I believe so. I believe so. But let's say that… You said, what, a seven-day trial? Yes. And the judge wrote a 25-page findings of fact and conclusions of law? Yes. It was comprehensive, and I think it addressed every single point, and we're only here on questions of law. But remember, though, that… When was the summary judgment in it? The date? It was in the same calendar year. Before the trial? Yes, before the trial. And you're saying evidence that came in that was determined at the trial, findings of fact, are now binding for upholding that summary judgment? It's as if the court reconsidered itself and allowed in evidence and nonetheless found no injury again. What case says that? What's that? What case says that? I'm interested. I think it's… That sounds like a unique proposition. It is a unique… And then have a trial on another matter and make findings of fact and then come back and say, okay, the summary judgment is good because I've now resolved the undisputed facts with findings of fact, and therefore summary judgment is good. That doesn't sound like it's a matter of law based upon undisputed facts. It sounds like something that went through a trial process. Now, if you're saying that summary judgment has now converted itself into something else, maybe, I don't know, judgment… What makes it less unusual is that ultimately the trial court at summary judgment found that they had not established an injury or damage at the summary judgment stage. They, again, were not able to tie any damages to the purported injury at the summary judgment stage as well. So I think that whichever way you look at it, whether you just confine to the record on summary judgment or you expand it to look at what the trial court actually did at trial on the licensing issue, they did not establish an injury that relates to the purported representation. And so, therefore, I believe that the summary judgment ruling should stand. They alleged that they were, in effect, blindsided by the trial court's decision to say that they hadn't established damages, claiming that we hadn't raised it. We did raise it in our opening brief. We also raised it in our reply, and if they felt that they were blindsided, they had an opportunity to move to have the court reconsider and produce additional evidence. They waited to the appeal stage in order to raise that particular argument. So as to issue two related to the fraud claims based on the building permit representations, I believe the court was, again, correct to find that they did not meet their burden. You know, this is another contract case where the attempt is to turn it into a fraud case. The court, again, did not find an injury tied to the permit representations. If for some reason the court finds the application of the source of duty rule and economic loss rule faulty, which I wouldn't see any reason to do so, because the post-closing construction agreement is what set the deadline for the work, the heralds didn't prove constructive fraud anyways. So you'd have a right result, wrong reason. You have no finding by the trial court on the permits that DeLuca actually made these statements. So here we did have a trial, and there's no finding that DeLuca actually said what they allege. You have the VCPA section of the memorandum essentially analyzing the same issues related to permitting and, again, finding no fraud. You have no finding that DeLuca did not have building permits when the statements were made. The permits were all, and their status was all, ascertainable and actually investigated by Ms. Harrell. The Beck v. Smith case makes very clear that when you are put on notice of something that you think you should investigate and you investigate it, you are assumed to have completed that investigation and found all facts that you could have ascertained. And the court expressly found that they did investigate the status of permits. So their claim is barred as well for that reason. Both of the licensing and permitting statements, we believe, also were not material. There was testimony from the dual agent, MUHA, that said that all material terms to the parties were found in the contract. And neither licensing or building permits were actually found in the sales contract. They were, though, both addressed... A distinction between a contract, language in a contract, and entering a contract? Yes, I understand that distinction, Your Honor. But nonetheless, it still has to be material, and there's a dual agent that says that it was not a material term. But you don't necessarily get it from the contract if the allegations of dealing with misrepresentation led to the entering of the contract. And the dual agent's statement was that all material terms, and we take it to mean not just material terms to the contract, but material terms to the parties, were ultimately found in the contracts themselves. It was the beginning of the Supreme Court's law that says that. It says you're not limited to that. The fact that that language is in that contract does not necessarily mean that that's not a material term if it's dealing with entering a contract. So if all we had was just it's not in the contract, then yes, you could have fraud in the inducement or some other statement and representation that was made. But we have more, just a dual agent who's saying all material terms found their way into the contract itself, which addressed ultimately licensing and permitting in the post-closing construction agreement. Does the source of duty rule bar a constructive fraud claim or misrepresentation? When the injury complained of arises solely from the contractual relationship, yes. Not complained of, but actually found. So here, again, the court didn't find injury because of failure to have building permits. The court found injury solely because the house was not finished when it was contractually required to be finished. The court did not buy their expert's argument that effectively the whole house had to be torn down because of either defects or permitting issues. Because the county official, the building official, said no, you don't have to tear this house down. And so there's no injury, again, to establish constructive fraud. All you have is an injury related to the contract. The trial court has done all that needs to be done here. There's no other damages that can be awarded to the heralds here. There's no punitive damages claim. Attorney's fees have already been addressed by the trial court. There's, rescission was addressed. So there's just no basis to send this back, given what's already been decided and awarded. So the district court did find that the delay caused an injury. And it seems to be the question is, well, it's an injury, but it's not a lot of money. Is that it? But the delay was not determined to have been found by building permits or licensing. It was only found to have occurred, that the house was not finished on time. And that obligation came solely from the post-closing construction agreement, which set a date of August 1st. So I think. Delay in permitting, that is, delay in permitting caused an injury. That's not a finding by the trial court. No, there was no express finding that Mr. DeLuca did not have permits. There was no express finding that Mr. DeLuca delayed obtaining permits. Those findings are not there. So when you say findings based upon undisputed facts, you are saying there is viewing the evidence in a light most favorable to the non-moving party. Findings notwithstanding, that there's nothing that has been alleged. If we take everything they say is true, that would substantiate an injury. That's your statement. On summary judgment, yes. At trial, obviously, you have a different standard. You look at the court's findings. What are we reviewing here? Are we reviewing it from the trial, the verdict of trial? Or are we talking summary judgment for right now? They've raised three assignments of error or issues. Because summary judgment is what I'm going to. Yes, so they've raised the summary judgment. They've also raised constructive fraud findings, which related to findings at the trial court. The summary judgment relates just to licensing. The constructive fraud relates just to permitting. So permitting, absolutely clearly out, given all the findings by the trial court. And then licensing as well, given either the record before the trial court on summary judgment or if you allow the evidence that actually came in on licensing. They didn't tie injury to their claims. Thank you, Mr. Coffman. Thank you, Your Honor. Mr. Lynch. Thank you. So to answer Judge Rushing's question about damages from licensing, before I do that last question, I think I heard the words, I suppose if you use the word express, that's true. However, Judge Rushing quoted the opinion, which said, The only damages arising from a lack of permits is that it delayed licensing. I mean, it recognized injury. And again, the court didn't rack in with all the facts and all the consequences because it says, I don't need to. Constructive fraud is barred as a matter of law whether it's because of the common source of injury. So what do you make of that? Does that require there be a monetary? Does the damage prong of the fraud claim require for a monetary injury? No, Your Honor. As we said, Bergmuller and Packard stand for the proposition that we're allowed to make a decision as a matter of right. If he makes a fine with constructive fraud, both Bergmuller and Packard with constructive fraud. So that's that. To answer Judge Rushing's question. Okay. I had mentioned the expert report by the defendant. The trial court in the day. Both sides had experts, right? Yes, that's correct, Your Honor. One on each side? Multiple. There was two damages experts who say, how much does it cost to get this in shape? And then there was another expert that kind of on the building code. There was another expert who talked about the beam. So there were several. Battle of the experts. Battle of the experts, Your Honor. But they're experts on construction defects and what it would cost to fix this. His opinion was adopted by the trial court as the correct measure of damages with one exception, that he did not have money in there to replace this beam that Judge Rushing mentioned. In any event, this expert report, which is at JA 1582. It starts before that. It starts at 15, I think. It starts before that. But there's a section on 1582 which says, correct stair risers, collar ties, missing units, rebuild deck, reinstallation of pergola, removal and reinstallation of cabinets, meters, knobs, hardware, cedar, trim, siding, removal of existing window flashing, 600 feet. It actually calls out the garage rental at $15,000. It talks about roof repairs, metal roof and flashing. So there's a number of this. I won't go on any further. Now, the EGLE's invoice, which was in the record on summary judgment. It says JA 214. It says that they built this roof on the garage, also known as the carriage house. And the collar ties, I can represent to the court, the collar ties that are called out in this expert report were a part of the roof. And there was testimony that it needed collar ties to make the roof structurally sound and it did not have them. And they built that EGLE's case. EGLE also built the opening of the garage. I have a picture of it right here. That's the opening. It is listed on their invoice. Thank you, counsel. I'll take a look at those pages you referenced. I just want to confirm that the expert report you're talking about, the district court, that's the one the district court adopted. That expert's version. Thank you. There's more I can say about that. In our complaint, which was of course before the court on summary judgment, this is JA 75. We say on reasonable suspicion and believe the individuals that perform plumbing and gas fitting, we had allegations like this for a number of subs, were not licensed for the work they were hired to complete. In particular, much of the plumbing work in the house is either incomplete or improperly installed. The gas fitting work is installed in a dangerous manner. That was all in the complaint. So there's that. So property purchase, 2018-2019, $4 million outside of Ballington, Virginia. Yes. Just a question. Any effort to mitigate that damage? I mean, it's been a number of years. That property out there can almost take judicial notice. It's probably not $4 million anymore. Probably higher. Perhaps. I mean, if that's so, then you would be standing before us, I take it. Because you want to rescind the contract. You want to just say take the contract. It may be a point. The other side may say, yeah, give us the contract. We'll take it back. They may. We paid $4.5 million for a property that takes peace of mind of everything. My clients with a family don't want to sleep in a house that was constructed illegally. That is their issue. All right. And just the sales price. I mean, I think the way a rescission would work is you say we paid $4.5 back then. You give us the $4.5 back, we'll give you the title. Now, the court is allowed to adjust interest. If there's custom work, you can adjust it to make it fair. That's how equity works. So there's a chance you might take a look at that before we write this opinion and let us know if that happened. Well, can I ask you about that, about what you want out of this? Because you haven't talked about it, but your third claim is an attorney's fees claim. And this has been a, dare I say, over-litigated case, at least in the district court's perspective. But the parties agreed and the court ordered that attorney's fees would be bifurcated from the merits, right?  So you're asking us, I thought your argument on appeal was that the sales contract entitles us to attorney's fees and any violation of the post-closing is a violation of the sales contract. And you told us in your brief that we have all the findings in front of us that we need to conclude that the sales contract provision applies here. And if that's true, then why didn't you file a motion for fees? You had everything you needed to do so. That's right. The answer to that question is we did not have a finding of liability on the sales contract. I didn't think under Rule 11, where I don't have a finding of liability, I can move your fees on a contract that you never signed. Does that undermine our jurisdiction that there's been no final order? There was a final order. There was an order, but it failed to pay fines. And there's a case law in this court. I think it's a last minute deal. No, you've told us in your brief that the court made all the findings it needed to, but you think that entitles you to fees because all those findings show that it's not just a violation of the post-closing. It's a violation of the sales contract. And the court didn't clarify exactly that. But my thought is if that's true, then as an attorney, I would have moved for attorney's fees because the court has made all the findings necessary to entitle me to fees. And it was bifurcated by your request. And no one asked for fees. It seems to me a bit of it like a redo. We're being asked to send it back so you have a chance to try that out again. Yes, I had everything calculated. I did have a legal fine for liability. And there was some argument, do I have to file a motion to reconsider? There's a law on that on the Fourth Circuit. I can't remember if it was Sweeney or Belcon. It was Belcon. They said we did not find it significant that no request for additional findings was made. Under Rule 52B, the duty to make finals is back after a defense trial exists independently of any request by the court. And it's your question. We were thinking, if I don't have a finding of liability to increase the sales contract, how can I go in there and say I get you?  The other element to that is his opinion kind of gives the impression that we have worn him out a little bit. And make some findings on fees. And to go back to that audience. You're hoping for better luck here. Well, I can't figure out how to do that. Just clarifying. All right. Thank you. The main thing was he left. Yeah. Your Honor, I'll rest unless there's any more questions. Thank you. Thank you. You don't have any more time, do you? No, I do not. I'm getting up to it. Pardon? I thought you were getting up here to say something. It's been a pleasure. We're going to come down and read counsel and then we'll call the next case. We appreciate your arguments.
judges: Robert B. King, James Andrew Wynn, Allison J. Rushing